# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### (MIAMI DIVISION)

RICHARD KURZBAN,                                    CASE NO. 1:17-CV-20713-DPG

     Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC,

     Defendant.

_____/

## DEFENDANT SPECIALIZED LOAN SERVICING, LLC'S
## MOTION TO DISMISS AMENDED COMPLAINT

Defendant, SPECIALIZED LOAN SERVICING, LLC ("SLS" or "Defendant"), by and through the undersigned counsel, hereby moves to dismiss RICHARD KURZBAN's ("Plaintiff") Amended Complaint (the "Amended Complaint") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and states the following in support thereof:

## PRELIMINARY STATEMENT

The Amended Complaint brings three counts against SLS, alleging two violations of the Real Estate Settlement Procedures Act ("RESPA") and one violation of the Fair Debt Collection Practices Act ("FDCPA"). The claims arise from a default letter (the "Notice of Default) and a loss mitigation application. However, Plaintiff agreed to surrender the subject property, rather than redeem the property, and obtained a discharge as to the underlying debt during a 2009 bankruptcy action (the "Bankruptcy Action"). [DE 13-1]; [DE 13-2].[1] Therefore, Plaintiff's

---

[1] This Court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiffs claim and (2) undisputed. In this context, `undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F. 3d 1272, 1276 (11th Cir. 2005). Also, this Court may take judicial notice of the documents in the public records. See e.g., Kloprfenstein v. Deutsche Bank Securities, Inc., 592 Fed. Appx. 812, 816 fn. 5(11th Cir. 2014) ("[A] district court

"actual damages" resulting from the fear "that Plaintiff may lose Plaintiff's home as a result of" the alleged violations is patently absurd – Plaintiff made a decision to surrender this property nearly eight year ago.

Simply put, this action arises from an attempt to manufacture a claim in order to obtain monetary damages. Plaintiff swore under the penalty of perjury that he would surrender the property in order to obtain his Chapter 7 discharge. Now after obtaining that discharge, Plaintiff is telling this Court that he was harmed by Defendant's alleged violations because he could have had a lower interest rate on the discharged debt, because the alleged violations caused him to experience fear of losing the home that he had agreed to surrender, and that he was put in a "Catch-22 of paying sums that he did not owe or having a foreclosure action filed against him." These inconsistent statements demonstrate the manufactured nature of this action.

Beyond the absurdity of the underlying claims in light of the Bankruptcy Action, Plaintiff has also failed to comply with a necessary condition precedent to bringing this action. Specifically, Plaintiff's mortgage (the "Mortgage") requires that he provide Defendant with notice and an opportunity to cure any purported error. Here, no such notice was provided. Instead, Plaintiff immediately commenced with this action. In fact, Count I alleges that Defendant "failed to promptly review the loss mitigation application" allegedly received on December 9, 2016, while this action was filed on January 4, 2017, a few weeks later.

Lastly, each Count fails to state a claim on their merits, independent of the aforementioned deficiencies. Count I fails to allege actual damages nor a pattern or practice of

---

may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment."); Fed. R. Evid. 201; see also Popescu v. JP Morgan Chase & Co., 2013 WL 5535867, at *1 (S.D. Fla. Oct. 7, 2013); Universal Express, Inc. v. S.E.C., 177 F. App'x 52, 53 (11th Cir. 2006). Accordingly, Defendant requests that this Court take judicial notice of the Bankruptcy Petition, the Order Discharging Debtor, the Mortgage, the Foreclosure Complaint, the Notice of Appearance as they are a matter of public record. Further, Defendant requests that this Court take judicial notice of these documents, as well as the Response, as they are central to the issues in the Amended Complaint and are not reasonably subject to dispute.

non-compliance. Count II, The FDCPA claim, fails because it is founded upon a fundamental misunderstanding of the statute of limitations – both procedurally and substantively. Count III fails because the exhibits demonstrate there was no violation and the response was sufficient.

For each of the aforementioned reasons, which will be expanded upon below, the action should be dismissed with prejudice and without leave to amend as amendment would be futile.

## RELEVANT FACTS

Plaintiff executed a Note and Mortgage (together, the "Loan") on December 21, 2005. [DE 13-3]. The Loan was secured by certain real property (the "Property"). On September 29, 2009, Plaintiff filed a Chapter 7 Voluntary Petition (the "Bankruptcy Petition"). [DE 13-1]. In the Bankruptcy Petition, Plaintiff identified the Property and stated it was "To Be Surrendered". Id. at pp. 8, 39, 40. The Bankruptcy Petition also states that the Property is not Plaintiff's primary address, and he hadn't occupied the Property since September 2008. Id. at p. 36. On January 11, 2010, the Bankruptcy Court entered the Order Discharging Debtor. [DE 13-2].

On February 4, 2016, Defendant sent the Notice of Default to Plaintiff in compliance with Paragraph 20 of the Mortgage as a requirement prior to bringing a foreclosure action. [DE 15] at pp. 15-17; [DE 13-3] at ¶ 20. The Notice of Default states in bold and capitalized letters:

**"IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, PLEASE BE ADVISED THAT THIS LETTER CONSTITUTES NEITHER A DEMAND FOR PAYMENT OF THE CAPTIONED DEBT NOR A NOTICE OF PERSONAL LIABILITY…"**

[DE 15] at p. 16.

On March 29, 2016, an action was filed to foreclose upon the Note and Mortgage. [DE 13-4]. On July 7, 2016, Shuster & Saben, LLC ("Plaintiff's Counsel") entered a formal Notice of Appearance on behalf of Plaintiff in the foreclosure action. [DE 13-5]. That same day, Plaintiff's Counsel sent a letter to SLS (the "Letter") that inquired as to the owner of the Note and

Mortgage, sought clarification of the amount necessary to reinstate the loan, requested information concerning the breakdown of the reinstatement amount, and asserted an unspecified and/or unclear error in the reinstatement amount. [DE 15] at pp. 18-19; ¶ 29.

On July 21, 2016, Defendant sent a response to the Letter to Plaintiff's Counsel (the "Response"). [DE 13-6]; [DE 15] at pp. 25-35, ¶ 31. The Response provided the owner information, an itemized breakdown of the fees assessed on the account since Defendant began servicing the Loan, and that Defendant found no errors related to the account. [DE 15] at pp. 25-26; [DE 13-6] at pp. 5-6. The Response also provided contact information for any additional questions. [DE 15] at p. 26; [DE 13-6] at p. 6. In addition, the Response directed Plaintiff to contact the prior servicer as to any questions regarding the account while it was servicing the account. [DE 15] at p. 25; [DE 13-6] at p. 5. Lastly, the Response provided copies of the Note, Mortgage, a Payment History, and an Escrow Breakdown. [DE 13-6] at pp. 8-35; [DE 15] at pp. 25-35. No further communication is alleged to have occurred regarding the Letter, Response, or information contained therein.

On December 9, 2016, Plaintiff allegedly sent a loss mitigation application to Defendant by e-mail. [DE 15] at ¶ 6. On January 4, 2017, Plaintiff filed this lawsuit.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  To avoid dismissal under Rule 12(b)(6), the factual allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." Id. at 555.  In

making this plausibility determination, a court must accept factual allegations as true; however, this "tenet ... is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Once an exhibit is attached to a pleading, it "is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court's analysis is 'limited primarily to the face of the complaint and the attachments thereto.'" Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F. 3d 1364, 1368-69 (11th Cir. 1997).

A court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## ARGUMENT

Plaintiff's Amended Complaint fails as a matter of law for several reasons. First, Plaintiff's claims are manufactured and should be dismissed pursuant to the anti-absurdity canon. Second, Plaintiff's claims should be dismissed because Plaintiff has not been injured by the purported conduct and therefore lacks standing. Third, Plaintiff's claims should be dismissed because Plaintiff has failed to comply with a necessary condition precedent found in Paragraph 20 of his Mortgage prior to bringing this lawsuit. Lastly, Plaintiff's claims should be dismissed because each Count is substantively deficient independent of the aforementioned issues.

### A. Plaintiff's Amended Complaint Should be Dismissed Pursuant to the Anti-Absurdity Canon

Plaintiff should not be allowed to benefit from alleged violations of RESPA resulting from Plaintiff's insincere attempts to obtain information allegedly relating to the Mortgage and to modify the Loan despite the debt having already been discharged and Plaintiff already having agreed to surrender the Property. Just as a debtor "is making a mockery of the legal system" where the debtor agrees to surrender in a bankruptcy action but then proceeds to defend in an

action to foreclosure on the surrendered property, it follows that bringing an affirmative cause of action arising from a total disregard of the discharge and agreement to surrender is similarly a "mockery." See In re. Failla, 838 F.3d 1170, 1177 (11th Cir. 2016) (finding that "[h]aving chosen to surrender, the debtor must drop his opposition to the creditor's subsequent foreclosure action"). Accordingly, Defendant requests that this Court dismiss the Amended Complaint in order to maintain Congress's intent and protect the FDCPA and RESPA from manipulative practices attempting to distort their respective effects.

Under the anti-absurdity canon, federal courts have the power to preserve the integrity of a statute by preventing an absurd result in its application. See Silva-Hernandez v. U.S. Bureau of Immigration Servs., 701 F.3d 356, 363 (11th Cir. 2012). Specifically, where application of a statute would be contrary to the spirit and the purpose as intended by Congress, "the intention of the drafters…controls," even where there is a technical violation. See Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers"); United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989).

Section 2605(k) of RESPA was not enacted to enable the creation of artificial claims. See 12 U.S.C. § 2601(a). To the contrary, the statute was created to provide borrowers timely and accurate information about their mortgages. 12 U.S.C. § 2601(a). It is illogical to presume that Congress, in its efforts to assist borrowers in obtaining access to loan information, intended for individuals to exploit RESPA by seeking recovery of damages through meritless or manufactured claims. Thus, where a RESPA action is not grounded on genuine failures of disclosure or surreptitious loan practices, but rather on an excessive "attempt to leverage settlement and obtain fees. . . [s]uch actions. . . are contrary to the intent of the statute and . . . fail as a matter of law." See Guillame v. Federal National Mortgage Association, 928 F. Supp. 2d

1337, 1341 (S.D. Fla. 2013).

In <u>Guillame</u>, the court rejected the plaintiffs' claim for a TILA violation where they had made a request for information to the defendant while there were foreclosure proceedings pending between the parties. <u>Id.</u> The court found that plaintiffs did not "**suffer from any meaningful deprivation of information** concerning their mortgage loan. . ." <u>Id.</u> (emphasis added). Although the general rule is that a court should not look past the plain meaning of a statute, when the purpose of the statute is contradicted by its application then the court should look to the intention of the drafters. <u>Id.</u>; <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 242 (1989). <u>See</u> <u>Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.</u>, 550 U.S. 81, 105 (2007) (J. Stevens, concurring) ("As long as the court is faithful to the intent of Congress, the decision to override the strict interpretation of the text is a correct performance of the judicial function.").

Here, just like in <u>Guillame</u>, Plaintiff did not "suffer from any meaningful deprivation of information concerning [his] mortgage loan." Rather, Plaintiff's sole contention in Count III is that Defendant allegedly did not adequately explain the breakdown of "Fees assessed by prior servicer" and did not correct the alleged error that the amount due in the reinstatement letter was too high. <u>See</u> [DE 15] at ¶¶ 47-53. These are fees for a debt that Plaintiff already successfully had discharged in bankruptcy, regarding the Notice of Default received nearly half a year earlier, and during the pendency of the Foreclosure Action for which the Notice of Default was sent to satisfy a condition precedent to bringing suit. Similarly, Count I relates to the speed and thoroughness by which Defendant reviewed Plaintiff's loss mitigation application for a debt that has been discharged and a property that Plaintiff has agreed to surrender.

Simply put, the Letter and loss mitigation application were attempts to induce a violation of RESPA solely to fabricate a claim for monetary compensation. Plaintiffs did not suffer any meaningful deprivation of information as a result of SLS's alleged failure to provide a

breakdown of the prior servicer fees for a debt which Plaintiff had discharged in bankruptcy. It would be adverse to Congressional intent to permit Plaintiff to benefit from an apparent attempt to manufacture technical violations. Thus, this Court should dismiss the Amended Complaint with prejudice pursuant to the Anti-Absurdity Doctrine.

**B.      Plaintiff's Amended Complaint Should be Dismissed for Lack of Standing**

As a threshold matter for any federal claim, a Plaintiff must demonstrate that it has Article III standing. See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1250 (11th Cir. 2015). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F. 3d 1259, 1264-65 (11th Cir. 2011). The "irreducible constitutional minimum" of standing under Article III consists of three elements: (1) the plaintiff must have suffered an actual or imminent injury, or a concrete "invasion of a legally protected interest"; (2) that injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Hollywood Mobile Estates Ltd., 641 F. 3d at 1265.

Recently, the United States Supreme Court issued a decision in which it explained how these factors apply where a statute provides for statutory damages. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). The Court explained that "statutory damages combined with a procedural violation of the statute are not enough: 'concreteness' requires than an injury 'actually exist." Higgens v. Trudent Asset Management, LLC, Case No. 1:16-cv-24035-RNS (S.D. Fla. Mar. 28, 2017) citing Spokeo, 136 S. Ct. 1548. "Indeed, the injury must be 'real,' and not 'abstract'". Id.; see also Meeks v. Ocwen Loan Servicing, LLC, 2017 WL 782285 (11 Cir. Mar. 1, 2017) (affirming dismissal of complaint with prejudice because the plaintiffs "suffered at

most 'a bare procedural violation").

Here, Plaintiff has alleged that the basis for his injury in Count I consists of (1) the time he spent compiling the financial documents for the loss mitigation application; (2) the inability to reduce the interest rate on the Loan through a loan modification; and (3) stress, anxiety, aggravation, and inconvenience all stemming from that he is worried he may lose his home as a result of the alleged failure to timely review the application. [DE 15] at ¶¶ 18-20. With respect to the first, an injury cannot occur before the purported violation, so his time compiling documentation is not a valid injury. See Long v. Residential Credit Sols., Inc., No. 9:15-CV-80590, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015). With respect to the second, Plaintiff is simply not harmed by his speculation that he could have received a lower interest rate on a debt that he already had discharged nearly eight years earlier. With respect to the third, Plaintiff agreed to surrender the Property nearly eight years ago. Emotional damages related to concern over losing a property that he declared under penalty of perjury that he would surrender is simply not an actual injury as it lacks any causation.

The alleged basis in Count II is that Plaintiff was put "in the Catch-22 of paying sums that he did not owe or having a foreclosure action filed against him," and he suffered a string of emotional damages including "fear of losing his home". [DE 15] at ¶¶ 41, 45. Again, there is no causation, the Catch-22 was actually caused by his having agreed to surrender the Property in order to obtain a bankruptcy discharge of the Loan. Now, Plaintiff cannot be heard to complain that the foreclosure action, that necessarily followed from his agreement to surrender the Property, is happening. See In re Fallia, 838 F. 3d at 1177 ("[o]rdinarily, when debtors surrender property to a creditor, the creditor obtains it immediately and is free to sell it. Granted, a creditor must take some legal action to recover real property – namely, a foreclosure action…").

The alleged basis for injury in Count III is "Plaintiff has sustained actual damages, as a

result of SLS's failure to comply with RESPA." [DE 15] at ¶ 51. Such a pleading is unquestionably deficient – there is no concrete injury alleged, a bare recitation is insufficient.

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice, and without leave to amend as amendment would be futile.

**C.**     **Plaintiff Failed to Allege Compliance with a Necessary Condition Precedent**

In addition to Plaintiff's claims failing for the aforementioned reasons, Plaintiff failed to allege compliance with a necessary condition precedent to bringing these claims. Specifically, Plaintiff was required to provide SLS notice, and the opportunity to cure any potential error, under paragraph 20 of the mortgage. [DE 13-3] at ¶ 20; [DE 13-6] at p. 21. Paragraph 20 states:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

It is well settled that a contract must be read to give meaning to every word and all of its parts.  Equity Lifestyle Properties, Inc. v. Florida Mowing And Landscape Serv., Inc., 556 F. 3d 1232, 1242 (11th Cir. 2009) ("We must read the contract to give meaning to each and every word it contains, and we avoid treating a word as redundant or mere surplusage if any meaning, reasonable and consistent with the other parts, can be given to it"). Therefore, any attempt to suggest compliance with the notice and cure provision found in Paragraph 20 is unnecessary in this case is simply misguided. The clause stating, "or any duty owed by reason of" is unquestionably broad and expands the application of the notice and cure provision to claims such as the ones Plaintiff is alleging.

This language would otherwise be redundant, unless it were to expand the application of the notice and cure provision beyond the duties owed under the four-corners of the Mortgage itself. As the Southern District of Florida explained in St. Breux v. U.S. Bank, Nat. Ass'n, 919 F.Supp.2d 1371 (S.D. Fla. 2013), the 'notice and cure' provision found in Paragraph 20 of the Mortgage bars a Plaintiff's claims where it "applies by its terms to [the] action." Id. at 1375; see also Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11 Cir. 2001) (holding that a claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties").

Count I relates to RESPA and efforts to modify the Loan, Count II relates to the amounts permitted to be collected and the Notice of Default sent by Defendant, and Count III relates to communications sent pursuant to RESPA and representations as to the amount due under the Note and Mortgage. Each of these actions relates to a duty owed under, or by reason of, Plaintiff's Mortgage. Defendant would only owe a duty to review a loss mitigation application under RESPA or respond to a purported Qualified Written Request under RESPA if it was the servicer of the Mortgage. Similarly, Defendant is obligated by Paragraph 20 of the Mortgage to send the Notice of Default as a condition precedent to bringing a foreclosure action.

Since each of Plaintiff's Counts relate to rights or duties owed under Plaintiff's Mortgage, Plaintiff was required to comply with paragraph twenty (20) and provide Defendant notice and an opportunity to cure any alleged breach of the Mortgage. See Sotomayor v. Deutsche Bank Nat'l Trust Co. et al., No. 15-cv-61972, 2016 WL 3163074 at *2-3 (S.D. Fla. Feb. 5, 2016) (enforcing the notice and cure provision to bar claims for alleged violations of the FDCPA, FCCPA, and TILA arising from allegedly inflated property inspection fees and a payoff statement that was allegedly inaccurate due to inclusion of the allegedly inflated fees); Charles v. Deutsche Bank Nat'l Trust Co. et al., No. 0:15-cv-21826-KMM, 2016 WL 950968 (S.D. Fla.

Mar. 14, 2016) (enforcing the notice and cure provision to bar claims against loan servicer for alleged violations of the FDCPA, FCCPA, TILA, and RESPA arising, in part, from allegedly inflated property inspection fees); Hill v. Nationstar Mortgage LLC, No. 1560106-CIV, 2015 WL 4478061 (S.D. Fla. July 6, 2015); see also Johnson v Countrywide Home Loans, Inc., 2010 WL 5138392 at *2 (E.D. Va. Dec. 10, 2010) (dismissing all claims for failure to allege notice and cure in accordance with mortgage contract); Niyaz v Bank of America, 2011 WL 63655 at *2 (E.D. Va. Jan. 3, 2011).

Lastly, several Courts have held that the notice and cure provision applies to both lenders and borrowers, and as such Plaintiff would need to notify Defendant that the Notice of Default in question included purportedly incorrect amounts, that it failed to timely review the loss mitigation application, and that it failed to adequately respond to the Letter prior to bringing this action. See, e.g., Pierson v. Ocwen Loan Servicing, LLC, 16-cv-62840, 2017 WL 634164, at *3 (S.D. Fla. Feb. 16, 2017) ("Contrary to the position taken in Plaintiff's Response, the notice and cure provision of the underlying mortgage is applicable to claims against Defendant as servicer of the loan despite Defendant not being a party to the underlying contract") (internal citation omitted); Sotomayor, 2016 WL 3163074 at *2-3 (S.D. Fla. Feb. 5, 2016); Charles, 2016 WL 950968 (enforcing the notice and cure provision to bar claims against loan servicer for alleged violations of the FDCPA, FCCPA, TILA, and RESPA arising, in part, from allegedly improper fees); Johnson, 2010 WL 5138392 at *2 (E.D. Va. Dec. 10, 2010) (dismissing all claims for failure to allege notice and cure in accordance with mortgage contract).

There can be no doubt that Plaintiff's claim relates to a duty SLS owed by reason of the mortgage contract. The Notice of Default was required by Paragraph 22 of the Mortgage. [DE 13-3] at ¶ 22. The loss mitigation review and response to the alleged QWR were required by, among other things, Paragraph 16 of the mortgage which states "all rights and obligations

contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Id. at ¶ 16; [DE 13-6] at p. 20. "Applicable Law" is defined in the mortgage as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders. . ." [DE 13-3] at p. 2; [DE 13-6] at p. 13. Therefore, Defendant owed Plaintiff a duty under the mortgage to comply with federal law, most notably under RESPA. Clearly, these duties came directly from Defendant's servicing obligations under the Mortgage, as but-for paragraph 16 and the duty to comply with RESPA, Defendant would not have been required to review the loss mitigation application or respond to the alleged QWR.

Plaintiff did not allege he notified Defendant that the Notice of Default included incorrect amounts in violation of the FDCPA. Nor did Plaintiff allege that he notified Defendant that it failed to timely review his loss mitigation application or adequately respond to the alleged QWR. Case law has become sufficiently established to show that, when the nature of a claim relates to a duty owed under the mortgage, borrowers must notify servicers that an error has occurred and give said servicers the opportunity to cure any error. In this case, Defendant's actions flow directly from the Mortgage. As such, Plaintiff was required to notify Defendant of the error as a condition precedent to filing this claim. Since Plaintiff failed to do so, Plaintiff's claim should be dismissed with prejudice.

**D.    Plaintiff's RESPA Claims (Counts I and III) are Substantively Deficient**

Although Plaintiff's Claims each fail for the aforementioned reasons, even if they did not, they would still fail on their merits.[2] The deficiencies of Counts I and III are direct and will be

---

[2] The claims for statutory damages should fail independently because Plaintiff has failed to allege any cognizable "pattern or practice," a necessary element for statutory damages.[DE 15] at ¶¶ 22, 52-53 (merely stating without factual support that a pattern or practice exists). At best, Plaintiff is erroneously claiming that the two alleged instances in the Amended Complaint are sufficient to support the existence of a pattern or practice. See .McLean v. GMAC Mort. Corp., 595 F. Supp. 2d 1360, 1365-66 (S.D. Fla. 2009) ("finding defendant's insufficient response to two QWRs insufficient to establish "pattern or practice"); Miranda v. Ocwen Loan Servicing, LLC, 148 F. Supp. 3d 1349 (S.D. Fla. 2015) (Plaintiff's complaint that made blanket assertion that Defendant violated RESPA regulations

addressed first. Then, Defendant will explain in detail why Count II also fails as a matter of law, as it is founded upon a misunderstanding of the statute of limitations and its effect.

Counts I and III allege Defendant violated RESPA, however neither properly alleges actual damages. The Eleventh Circuit Court of Appeal has already held that actual damages are necessary to state a claim under section 2605 of RESPA. See Meeks, 2017 WL 782285 at n. 3 ("damages are an 'essential element in pleading a RESPA claim'"); Frazile v. EMC Mortg. Corp., 382 Fed. App'x. at 836 (11th Cir. 2010); See also McLean v. GMAC Mortgage Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009).

Costs incurred while preparing and sending a request for information or notice of error under RESPA, or of compiling loss mitigation documents, cannot serve as a basis for damages because, at the time those expenses were incurred, there has been no RESPA violation. See Long v. Residential Credit Sols., Inc., No. 9:15-CV-80590, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015). Rather, costs incurred in efforts to pursue compliance with an initial request for information after receiving no response, or an inadequate response, qualifies as actual damages under RESPA. See Rodriguez v. Seterus, Inc., No. 15-61253-CIV, 2015 WL 5677182, at *3 (S.D. Fla. Sept. 28, 2015) (damages associated with follow-up requests, because of a failure to respond or an improper response by a defendant, have been found to qualify as actual damages under RESPA); O'Brien v. Seterus, Inc., No. 9:15-CV-80300, 2015 WL 4514512, at *3 (S.D. Fla. July 24, 2015) (damages associated with a *second* qualified written request, sent because of an improper response by a defendant, have been found to qualify as actual damages under RESPA); Russell v. Nationstar Mortgage, LLC, No. 4-61977-CIV, 2015 WL 541893, at *2 (S.D. Fla. Feb. 10, 2015) (plaintiffs' costs involved in sending follow up letter to pursue compliance

---

as to four other loans, without any further facts to support that claim, is too conclusory and vague to support a claim for statutory damages under RESPA). Plaintiff demonstrated the futility of further amendment given that this allegation was amended to merely add unidentified "other borrowers." Compare [DE 1-4] at ¶ 20; [DE 15] at ¶ 22.

14

with their initial QWR as a result of defendants failure to adequately respond to the initial QWR considered actual damages).

Here, Count I does not involve any actual damages because there is no suggestion that Plaintiff sent any follow-up communication, and as outlined supra, the "actual damages" alleged in the Amended Complaint are non-existent. Count III does not include any valid allegations regarding actual damages. Further, since the Letter was not followed by any additional communication from Plaintiff, it is safe to say that no actual injury occurred – independent of the issues related to the Bankruptcy Action and Plaintiff's agreement under penalty of perjury to surrender.

Beyond that, Count III merely alleges that the Response was deficient. However, a cause of action does not exist simply because a plaintiff is "confused and/or unsatisfied with [the] answer." Bates v. JPMorgan Chase Bank, NA, 768 F. 3d 1126, 1135 (11th Cir. 2014); see also O'Brien v. Seterus, Inc., 2015 WL 4514512, at *3 (S.D. Fla. July 24, 2015) ("[RESPA] does not require the servicer to provide resolution or the explanation desired by the borrower; it requires the servicer to provide a statement of its reasons").

Here, the Letter sought clarification of certain amounts identified in the Notice of Default. [DE 15] at p. 23-24. Specifically, Plaintiff requested "a list of fees, charges, escrows, missed mortgage payments and expenses…" Id at p. 24. In addition, Plaintiff stated "[i]f you find that the reinstatement amount for charges and missed mortgage payments incurred from April 1, 2011 through February 4, 2016 was actually less than $193,520.77 please make any necessary correction of any errors found…" Id.

In response, Defendant provided the Note, Mortgage, Payment History, and Escrow Breakdown. Id. at p. 25-35; [DE 13-6]. In addition, Defendant provided an itemized list of the fees charged to the account. [DE 15] at p. 26; [DE 13-6] at p. 6. Plaintiff simply takes issue with

15

this because it did not include a breakdown of the "fees assessed by prior servicer". [DE 15] at ¶ 50. However, at no point did Plaintiff identify the level of specificity requested, and there are no allegations that Plaintiff asked for any clarification as to these fees. See generally [DE 15]. While this might not have been a response that satisfied Plaintiff, that does not make it insufficient. Regarding the "notice of error", Plaintiff explained in the Response that it found no errors. Id. at p. 26; [DE 13-6] a p. 6.  The "notice of error" appears to simply have been an attempt by Plaintiff to suggest certain amounts were barred by the statute of limitations – a basis that was never actually asserted, and which is incorrect for the reasons that will be addressed below regarding the same.

For the aforementioned reasons, the RESPA Claims should be dismissed with prejudice and without leave to amend because amendment would be futile.

**E.**    **Plaintiff's FDCPA Claim (Count II) Fails as a Matter of Law**

Initially, Count II fails because the Notice of Default was not debt collection. In fact, it included a notice in all caps and all bold lettering that "if you… received a bankruptcy discharge of this debt, please be advised that this letter constitutes neither a demand for payment…" [DE 15] at p. 16. Plaintiff oddly asserts that this was a "self-serving representation". Id. at ¶ 43. Plaintiff maintains that the Notice of Default nonetheless was intended "to induce [Plaintiff] to send payment." Id. This is an odd position given that the Notice of Default explicitly states that the letter is not a demand for payment for someone who received a bankruptcy discharge, such as Plaintiff. Id. at 16. One would need to ignore the substance of the letter to find otherwise.

Therefore, there was no attempt to collect a debt and therefore this claim fails as a matter of law. Beyond that, it rests upon a faulty understanding of the statute of limitations and how it applies to a debt.

**1.**    **The Amounts are not Barred by the Statute of Limitations**

Recently, the Supreme Court entered an opinion clarifying the impact of the statute of limitations on mortgage loans. Bartram v. U.S. Bank Nat. Ass'n, --- So. 3d ---, 2016 WL 6538647 (Fla. Nov. 3, 2016). Bartram confirmed that the breach of the mortgage contract must have occurred within the five-year period prior to the foreclosure complaint, but it also makes clear that the entire debt may be accelerated based upon a breach that occurs within that five-year window.

For example, the Court quotes with approval a First District Court of Appeals opinion in which it explained "that a note securing a mortgage creates liability for a **total amount of principal and interest**, and that the lender's acceptance of payments in installments does not eliminate the borrower's **ongoing liability for the entire amount of the indebtedness**." Id. at *7 quoting Nationstar Mortg., LLC v. Brown, 175 So. 3d 833, 834 (Fla. 1st DCA 2015). Simply put, the installment nature of the loan does not create a statute of limitations bar to collecting the entire debt. If a creditor elected to ignore every default on the loan through the date of maturity, and then seek to collect the full amount owed under the mortgage documents, nothing in the statute of limitations jurisprudence would prohibit it from doing so.[3]

The Florida Supreme Court goes on in Bartram to explain that after an unsuccessful foreclosure action, "the statute of limitations on the balance under the note and mortgage would not continue to run," and a "successive foreclosure action premised on a 'separate and distinct' default would not be barred. Bartram, 2016 WL 6538647 at *8. Rather, the parties "are simply placed back in the same contractual relationship as before…" Id. Since the full amount was

---

[3] This is because each default provides "the mortgagee the right, but not the obligation, to **accelerate all sums then due under the note and mortgage**." Bartram, 2016 WL 6538647 at *8. However, a prima facie case for foreclosure requires "an acceleration of [the] debt to maturity." Bank of America, N.A. v. Delgado, 166 So. 3d 857, 859 (Fla. 3d DCA 2015). Therefore, until the creditor exercises this optional acceleration clause, a cause of action does not accrue and therefore the statute of limitations does not begin to run. Snow v. Wells Fargo Bank, N.A., 156 So. 3d 538 (Fla. 3d DCA 2015) ("When the borrower defaults on a payment under a note containing an optional acceleration clause, the lender can exercise its option to accelerate all future payments, making the entire debt immediately due and payable. A cause of action on an accelerated debt accrues, and the **statute of limitation commences, when the lender exercises the acceleration option and notifies the borrower of this exercise**").

17

recoverable prior to the unsuccessful foreclosure, it would be contradictory to suggest the full amount was no longer recoverable when the parties are "placed back in the same contractual relationship."

In fact, the Florida Supreme Court quoted an order from the Middle District of Florida in which the Honorable Judge Hodges reasoned, "if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file subsequent foreclosure actions – **and to seek acceleration of the entire debt** – so long as they are based on separate defaults." Id. at *9 quoting Dorta v. Wilmington Trust National Ass'n, No. 5:13–cv–185–Oc–10PRL, 2014 WL 1152917 (M.D. Fla. Mar. 24, 2014). This is because the amount owed under the mortgage loan is not impacted by the statute of limitations, only that it can't again be accelerated without another default.

For example, the Florida Supreme Court explained that in Bartram, if the debtor "began to make monthly payments on the note, the Bank could not have subsequently accelerated the entire note until there were future defaults. Once there were future defaults, however, the Bank had the right to file a subsequent foreclosure action – **and to seek acceleration of all sums due under the note**…" Id.at * 10. The only qualification the Court provides is that the foreclosure action must be "based on a subsequent default, and the statute of limitations had not run on that particular default." Id.

Throughout Bartram, as identified above, the Court is entirely concerned with whether the statute of limitations had run on the particular default being sued upon. Provided the default itself is within the statute of limitations, the Court repeatedly confirms that the creditor can "seek acceleration of all sums due under the note," it can "seek acceleration of the entire debt," and that the debtor has an ongoing liability for "the entire amount of the indebtedness." Id. at *7-10. At no point does the Court ever say that 'all sums due under the note and mortgage' excludes

amounts more than five years old or qualify the amount that can be recovered. If the Court had so intended, it easily could have done so.

In fact, this is the reading of <u>Bartram</u> that one trial court recently relied upon in assessing a statute of limitations defense in a foreclosure action. <u>See</u> [DE 13-7] at 123:11-20 (" But I still believe that if they default again, you can go back to the beginning. You don't lose all those payments. I don't think that."); 131:23-133:1 ("From the way I read Bartram, you can go back to the very beginning and get everything he defaulted on…"). As such Count II of Plaintiff's Amended Complaint fails as a matter of law and should be dismissed with prejudice and without leave to amend, as amendment would be futile.

### 2.    The Statute of Limitations is an Affirmative Defense, not a Cause of Action

There can be no dispute that the statute of limitations is an affirmative defense to a cause of action. <u>See</u> Fla. R. Civ. P. 1.110(d) (listing statute of limitations as one of the "Affirmative Defenses"). However, "[a]n affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." <u>State Farm Mut. Auto. Ins. Co. v. Curran</u>, 135 So. 3d 1071, 1079 (Fla. 2014). As such, it is paradoxical for Plaintiff to allege that Defendant misrepresented the debt because Plaintiff had a possible excuse or justification for why he was not legally liable on the debt – despite the fact that in raising this excuse or justification, he is admitting that he does owe the debt.[4]

In fact, this issue was recently addressed by the District Court for the Middle District of Florida in the context of the FDCPA, with the Court explaining that the following are well-founded arguments: "(1) the statute of limitations is a 'defense, not an affirmative cause of

---

[4] This is further paradoxical insofar as Plaintiff received a discharge of the debt already, and therefore the statute of limitations is immaterial.

19

1169428.1

action;' (2) unlike a 'statute of repose,' a statute of limitations does not terminate a lien or extinguish a claim; and (3) the applicability of any statute of limitations cannot be resolved before a legal action is brought to enforce the Loan." Garrison v. Caliber Home Loans, Inc., 6:16-cv-00978-RBD-DCI, 2017 WL 89001 at *7 (M.D. Fla Jan. 10, 2017).

In recognizing these arguments to be well-founded, this Court explained that "the SOL Issue should be raised – if at all – as an affirmative defense to an actual collection or foreclosure action." Id. An affirmative defense that Plaintiff is not permitted to raise. See In re Fallia, 838 F. 3d 1170, 1177. In reaching this decision, this Court explained that it did not agree that a "dunning letter that 'failed to exclude from the amount due the monthly installment payments that exceeded five years' was 'sufficient to establish' at the pleading stage that 'the letter may have been deceptive or misleading to the least sophisticated consumer.'" Id. at n. 19. This agreement appears to be, at least in part, founded upon the fact that the statute of limitations does not terminate a lien or extinguish a claim. Id. at n. 17 (compiling cases).

For the reasons outlined in Garrison, this Court should similarly dismiss Count II of this action. Plaintiff's position is simply untenable and amendment would be futile, therefore the dismissal should be with prejudice and without leave to amend.

## **CONCLUSION**

WHEREFORE, for the above cited reasons, SLS requests that the Court dismiss Plaintiff's Amended Complaint with prejudice, and without leave to amend, and Order any further relief the Court deems just and proper.

Dated:  May 16, 2017.

CASE NO. 1:17-CV-20713-DPG

Respectfully submitted,

McGLINCHEY STAFFORD

_____/s/ *Joseph A. Apatov*_____
R. Carter Burgess, Esq.
Florida Bar # 58298
Joseph Apatov, Esq.
Florida Bar #93546
10407 Centurion Parkway N., Suite 200
Jacksonville, FL 32256
Tel: (904) 224-4499 / Fax:(904) 212-1828
cburgess@mcglinchey.com
japatov@mcglinchey.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished, electronically, through the CM/ECF system, to all parties on the service list, this 16th day of May, 2017.

Richard Shuster, Esq.
Shuster & Saben, LLC
1412 S. Patrick Dr., Ste 7
Satellite Beach, FL 32937-4374
richshuster@gmail.com
assistant2richardsshuster@gmail.com
***Attorney for Richard Kurzban***

_____/s/_____ *Joseph A. Apatov*_____
Joseph A. Apatov, Esq.